Griebel *v.* The State, *ex rel.* Niezer.

Filed June 28, 1887.

No. 13,447.

## Griebel *v.* The State, ex rel. Niezer.

Office and Officer.— *Quo Warranto.*— *Information in Nature of, Proper Proceeding for Obtaining Possession of Office.*—An information in the nature of a *quo warranto* is the appropriate remedy for obtaining possession of an office to which a person, duly qualified, has been legally elected. It is also the proper remedy for the removal of the incumbent of an office, who has usurped and illegally continues to hold it, and both remedies may be sought by the same information.

Same.— *County Auditor, Term of.*— *Breaking of Regular Succession.*— Where there has been an unbroken succession of terms from the adoption of the existing State Constitution to the present time, and no general acquiescence in a different day or time, the commencement of the term of a county auditor dates back to, and is governed by, the time at which the term of the auditor who was in office when the Constitution took effect expired. Where, however, the regular succession of terms has been broken by vacancies or other incidental causes, the term of a newly elected auditor begins when the regular or provisional term of his predecessor expires.

Same —*Estoppel.*—It is only when his successor has not been chosen and qualified that a county auditor can continue in office beyond his term, and whenever such officer has, in pursuance of an election to the office,

VOL. 111.—24

| | |
|---|---|
| 111 | 369 |
| 111 | 521 |
| 122 | 115 |

| | |
|---|---|
| 111 | 369 |
| 145 | 75 |

| | |
|---|---|
| 111 | 369 |
| 150 | 430 |
| 151 | 274 |
| 151 | 565 |
| 151 | 570 |
| 151 | 571 |

| | |
|---|---|
| 111 | 369 |
| 160 | 189 |

| | |
|---|---|
| 111 | 369 |
| 168 | 512 |

| | |
|---|---|
| 111 | 369 |
| f171 | 629 |

Griebel *v.* The State, *ex rel.* Niezer.

served the full term of four years, and his successor has been duly elected and qualified, he is estopped from denying that his term of office has expired.

CONSTITUTIONAL LAW.—*Repeal of Old Constitution by Inconsistent Provisions of New.—Statute.—Repeal by Implication.*—The adoption of a new Constitution repeals and supersedes all the provisions of the older Constitution, not continued in force by the new instrument; and the same rule applies to amendments of an existing Constitution, which are inconsistent with the original text of the instrument amended; also to statutory enactments which are inconsistent with later constitutional provisions embracing the same subject-matter.

From the Allen Circuit Court.

*J. Morris, J. M. Barrett, R. C. Bell* and *S. B. Morris,* for appellant.

*W. G. Colerick,* for appellee.

NIBLACK, J.—This proceeding is based upon an information in the nature of a *quo warranto,* against Adolph Louis Griebel, in the name of the State, and on the relation of John B. Niezer.

The information gives the court to understand and to be informed that on the 7th day of November, 1882, at a general election held on that day, in the county of Allen, in this State, the said Griebel was duly elected auditor of said county of Allen, and that after having duly qualified, he, on the 17th day of that month, entered upon the duties of the office to which he had been so elected; that, under the Constitution and laws of this State, the said Griebel was entitled to hold said office for and during the period of four years from the 13th day of said month of November, 1882, and until his successor should be elected and qualified; that at the general election held in said county of Allen, on the 2d day of November, 1886, the relator Niezer was lawfully elected auditor of that county as the successor of the said Griebel; that the said relator was, at the time of his said election, and still is, eligible to the office of auditor to which he was so elected; that, on the 6th day of said month of November, 1886, a commission was duly issued to the relator by the Governor

in pursuance of his said election, and that on the 13th day of said month he, the relator, executed an official bond as such auditor, and took the oath of office required by law ; that, on the 17th day of said month of November, 1886, the relator demanded of the said Griebel that he should surrender said office of auditor, and all the books, papers and property pertaining to the same, to him, the relator, but that the said Griebel wholly failed and refused, and still fails and refuses, to comply with said demand, and has ever since usurped and illegally continued to hold said office, and still continues to hold the same and to perform the duties pertaining thereto in violation of the rights and to the prejudice of the relator. Wherefore the relator prays that the said Griebel be ousted from said office, and that he, the relator, may be declared entitled to the possession thereof, and that he may have all other and proper relief.

A demurrer to the information being first overruled, Griebel answered, admitting that he was elected auditor of Allen county on the 7th day of November, 1882, as alleged in the information, but averring that at that time one Martin E. Argo was the incumbent of said office, and that on the 17th day of that month the said Argo requested him, the said Griebel, to take immediate possession, and to enter upon the duties of the office; that he, the said Griebel, thereupon informed the said Argo that his term of office would not commence until either the 1st day of March or the 1st day of November, of the year 1883 ; that the said Argo nevertheless desired that he, the said Griebel, should immediately take possession of the office, which he consented to do, and did at once, continuing ever since in the possession of the same, and in the discharge of the duties thereof, under a claim that his term of office will not expire until the 1st day of November, 1887, at which time he will be ready to surrender the office to which the relator has been elected as stated in the information ; that the relator's term of office does not begin until said 1st day of November, 1887.

The relator replied that Argo was elected auditor of said county of Allen at a general election held on the second Tuesday in October, 1878, for the term of four years, commencing on the 7th day of November, 1878; that, after having given bond and qualified as the law required, he, on said 7th day of November, 1878, took possession of the office, and entered upon the discharge of his duties as such auditor, and so continued for the full term of four years thereafter; that after the expiration of his term of office, to wit, on the 17th day of November, 1882, he surrendered the office to the respondent Griebel, who had been on the 7th day of that month properly elected to the office as the successor of him, the said Argo, and who had previously given bond and qualified as the auditor elect of said county of Allen; that he, the said Argo, so surrendered the office because his term of office had expired, and because the said Griebel was lawfully entitled to the possession of the office as his successor therein, and for no other reasons; that the said Griebel, as such successor, has held said office ever since the 17th day of November, 1882, and for the full term of four years.

Griebel demurred to this reply, but his demurrer being overruled, he elected to stand upon the demurrer, and declined to make further defence. The court thereupon entered judgment in favor of the relator, and ordered Griebel to deliver to him the possession of the office, together with all the books, papers and property pertaining thereto.

Error is assigned upon the overruling of the demurrers to the information and the reply respectively.

An information in the nature of a *quo warranto* is the appropriate remedy for obtaining the possession of an office to which a person has been legally elected and has become duly qualified to hold. It is also the proper remedy for the removal of the incumbent of an office, who has usurped and illegally continues to hold it, and both remedies may be sought by the same information. R. S. 1881, sections 1131, 1132, 1133 and 1134; .5 Wait Actions and Defences, 259,

263 ; *People* v. *Forquer*, Breese (Ill.) 104 ; *St. Louis County Court* v. *Sparks*, 10 Mo. 117 ; *Ex parte Strong*, 20 Pickering, 484 ; *Sudbury* v. *Stearns*, 21 Pickering, 148 ; *Lindsey* v. *Attorney General*, 33 Miss. 508 ; *People* v. *Tibbets*, 4 Cowen, 382, and note ; *Gass* v. *State, ex rel.*, 34 Ind. 425.

There is, consequently, no serious objection to the substantial sufficiency of the information.

The reply raises the question as to when the term of a county auditor either begins, or may begin, under the present Constitution of this State, and certain statutes having reference to that subject.

Before the adoption of our present Constitution the office of county auditor was only a statutory office. Section 44 of the 2d article of chapter 7 of the Revised Statutes of 1843, provided that "The county auditor shall hold his office for the term of five years from the first Monday in March next succeeding his election, and until his successor is chosen and qualified." R. S. 1843, 188.

Section 49, of the same article, further provided that when a vacancy should happen in the office of county auditor, the board of commissioners of the proper county should appoint some suitable person to fill the vacancy, who was to hold the office until the next general election, and until his successor was elected and qualified.

Under these two sections, the term of a county auditor, who succeeded a full term, and a regular succession of terms, commenced on the first Monday in March next after his election ; but where a person was elected to succeed one who held the office by appointment to fill a vacancy, his term commenced as soon as he was commissioned and qualified, and was ready to enter upon the duties of the office. This was usually within a few weeks after the election, which was then held annually in August, but was not, in the nature of things, uniform as to time. After the lapse of a few years, therefore, the term of the office of county auditor, in many of the counties of this State, was, by reason of intervening

vacancies, made to begin some time soon after the August election, at which the office was filled, instead of on the first Monday in March next succeeding, and this condition of things existed when our present State Constitution was adopted, which first gave that office a constitutional term, as well as a constitutional *status*.

The second section of article 6 of the Constitution ordains that " There shall be elected, in each county, by the voters thereof, at the time of holding general elections, a clerk of the circuit court, auditor, recorder, treasurer, sheriff, coroner, and surveyor. The clerk, auditor, and recorder shall continue in office four years; and no person shall be eligible to the office of clerk, recorder, or auditor more than eight years in any period of twelve years," the rest of the section having reference only to the terms of treasurer, sheriff, coroner and surveyor.

The third section of article 15 of the Constitution further ordains that " Whenever it is provided in this Constitution, or in any law which may be hereafter passed, that any officer, other than a member of the General Assembly, shall hold his office for any given term, the same shall be construed to mean that such officer shall hold his office for such term and until his successor shall have been elected and qualified."

The tenth clause of the schedule annexed to the Constitution, for the purpose of facilitating the reorganization of the State government under that instrument, provided that " Every person elected by popular vote, and now in any office which is continued by this Constitution ; and every person who shall be so elected to any such office before the taking effect of this Constitution (except as in this Constitution otherwise provided), shall continue in office until the term for which such person has been, or may be, elected, shall expire : *Provided*, That no such person shall continue in office after the taking effect of this Constitution for a longer period than the term of such office in this Constitution prescribed."

Under the operation of these constitutional provisions there has never been, since they took effect, any uniformity either as to the time when the term of county auditor begins, or as to when it expires, in the several counties of this State, and this want of uniformity has been greatly increased by the respective changes of the times of holding our general elections which have ensued. The act of May 31st, 1852, R. S. 1881, section 5893, nevertheless declared that a county auditor's term of office should thereafter begin on the first Monday in March next succeeding his election, and the act of March 3d, 1855, Acts of 1855, p. 52, prescribed, amongst other things, that the terms of county auditors should " commence on the first Monday of the month of November, immediately following the general October elections," and fixed that day as the time at which the terms of persons thereafter elected to the office of county auditor should expire.

In the case of *Howard* v. *State,* 10 Ind. 99, it was held that the Legislature has no power either to abridge or extend the term of an officer where his term is prescribed by the Constitution, and that, hence, the act of 1855 was in conflict with the second section of article 6 of the Constitution, hereinabove set out, and, for that reason, void.

In the more recent case of *Douglass* v. *State,* 31 Ind. 429, the doctrine that the Legislature can neither abridge nor extend the term of an officer which is fixed by the Constitution was reaffirmed, and the invalidity of the act of 1855, as applicable to cases like that of *Howard* v. *State, supra,* was again recognized, but the conclusion was then also reached that the act in question might be, and probably was, operative in some cases in which the succession of terms had been broken by intervening vacancies, and that, at all events, it had validity enough to repeal, by implication, so much of the act of May 31st, 1852, as declared that the terms of county auditors should commence on the first Monday in March next succeeding the times of their election.

To the conclusion at which this court then arrived, and

as thus stated, we still adhere.  We have also reached the further conclusion that the act of 1855 was, in effect, abrogated and annulled by the amendment of the Constitution which changed the time of holding our general elections from October to November.  The adoption of a new Constitution repeals and supersedes all the provisions of the older Constitution not continued in force by the new instrument. The same rule applies to amendments of an existing Constitution which are inconsistent with the original text of the instrument amended; also to statutory enactments which are inconsistent with later constitutional provisions embracing the same subject-matter.  *Pierce* v. *Delamater*, 1 Comstock, 17; Potter's Dwarris Statutes, 113; Sedgwick Statutory Law, 107.

This act of 1855 had special reference only to the terms pertaining to certain offices which had then to be filled at an October election, and when the October election was abolished there was no longer any election to which the act was, in any proper sense, applicable.  The case presented, therefore, is one of the implied repeal of a statute by the adoption of an inconsistent constitutional amendment.  There is, consequently, no statute now in force prescribing when the term of a county auditor shall be held to begin.  On that subject we are remitted to the provisions of the Constitution and of the schedule annexed, to which we have already referred.

Where there has been an unbroken succession of terms from the adoption of the Constitution until the present time, and no general acquiescence in a different day or time, the commencement of a county auditor's term dates back to, and is governed by, the time at which the term of the auditor, who was in office when the Constitution took effect, expired. But where the regular succession of terms has been broken either by intervening vacancies or other incidental causes, the term of a newly elected auditor begins when the regular four years term, or the provisional term, as the case may be, of his predecessor expires, and this results independently of any statute which may have been, or may hereafter be, en-

acted on the subject. Whenever a county auditor has, in pursuance of an election to the office, served the full term of four years, and his successor has been duly elected and qualified, he is estopped from denying that his term of office has expired.

As has been shown, it is only when his successor has not been chosen and qualified that a county auditor is authorized to continue in office beyond his term of four years. See Opinions of Attorney General Hord, vol. 1, 113; *State* v. *Thoman*, 10 Kans. 191; *Fant* v. *Gibbs*, 54 Miss. 396; *People* v. *Bull*, 46 N. Y. 57; *State* v. *Howe*, 25 Ohio St. 588; *State* v. *Brewster*, 44 Ohio St. 589; *State, ex rel.*, v. *Chapin*, 110 Ind. 272.

There is nothing averred in this case from which it can be inferred what the succession of terms in the office of auditor of Allen county has been, but the reply alleges that Argo, soon after his election in 1878, took possession of the office and held it for the full term of four years; that, after his term had expired, that is to say, on the 17th day of November, 1882, Griebel, as his duly elected and qualified successor, came into possession of the office, and served as such successor for the ensuing term of four years. The reasonable, and hence proper, inference from these allegations is, that Griebel was lawfully entitled to enter upon the duties of the office when he took possession of it, and that he had served out his full constitutional term of four years when Niezer demanded the office of him as stated.

The facts as alleged in the reply, when taken in connection with those set forth in the information and the answer, are sufficient to show that, as against Niezer, Griebel's term had expired when the demand was made. Consequently the demurrer to the reply was rightly overruled.

The judgment is affirmed, with costs.

ZOLLARS, C. J., took no part in the decision of this cause.
Filed June 30, 1887.